**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**CYNTRELLE WOODARD-WELLS**
**on behalf of her minor child, C.J.W.**                                      **PLAINTIFF**

**VERSUS**                                    Civil Action No.  2:23-cv-00142-HSO-BWR

**SHERIFF JOE BERLIN, INDIVIDUALLY**
**AND AS THE CHIEF POLICY MAKER**
**FOR THE JONES COUNTY SHERIFF'S**
**DEPARTMENT AND JONES COUNTY,**
**MISSISSIPPI**                                              **DEFENDANTS**

<u>**COMPLAINT**</u>

[ JURY TRIAL DEMANDED ]

COMES NOW the Plaintiff, Cyntrell Woodard on behalf of her Minor Child, C.J.W., who, by and through undersigned counsel, files this Complaint against SHERIFF JOE BERLIN ("Sheriff Berlin") & DOE OFFICERS 1-12 and shows as follows:

**PRELIMINARY STATEMENT**

This civil rights action seeks monetary damages against Defendants for violations of the Plaintiffs' rights guaranteed by the United States Constitution and Mississippi law. The wrongful conduct occurred on September 16, 2022, while the minor child was attending a school function in Jones County, Mississippi, at South Jones High School. Before his interaction with Defendant Berlin, the minor had never been convicted of any criminal act and had engaged in no act that could be considered criminal under the laws of the state of Mississippi. At all times relevant herein, the minor child was not involved in any illegal activity. The Defendants are liable for the violations and all resulting damages. The violations resulted from the policies and customs established and observed by the final policymaker for the Jones County Sheriff's Department ("JCSD"), Sheriff Berlin, is personally responsible for the causes of action arising herein. The actions by Sheriff

1

Berlin result from a custom and culture that encourages, sanctions, and protects violations of the constitutional rights of regular citizens and includes the physical and psychological abuse of children.

## JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and federal law, specifically under provisions of the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

2.      This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked under 28 U.S.C. §§ 1331 and 1343.

3.      The claims made in this Complaint occurred and arose in the State of Mississippi, this District, and the Eastern Division. Venue, therefore, lies in this Court under 28 U.S.C. § 1391.

4.      Under 28 U.S.C. § 1367, this Court also has pendent jurisdiction to hear state law claims.

## THE PARTIES

5.      Plaintiff Cyntrelle Woodard-Wells, is a natural person and a citizen of the United States and the State of Mississippi. She is the biological mother of the minor child, C.J.W.

6.      Defendant JOE BERLIN is and was at all times relevant to this Complaint a natural person and the Sheriff of Jones County, Mississippi, and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

7.      Defendant JONES COUNTY is a governmental entity of the State of Mississippi. Jones County funds and operates the JCSD, the primary law enforcement agency for Jones County. On information and belief, the policy maker for the Jones County Sheriff's Department is Sheriff

Joe Berlin, who took office on January 6, 2020. This Defendant may be served through its registered agent, Chancery Clerk Bart Gavin, at 415 N. 5th Avenue, Laurel, MS 39441.

**STATEMENT OF FACTS**

VIOLATION NO. 1
(Excessive Force)

8.    On September 16, 2022, after a football game, Sheriff Joe Berlin entered the South Jones High School's football locker room, accompanied by ten or more other officers, to confront C.J.W.

9.    Upon finding C.J.W. in front of his locker, Sheriff Berlin aggressively got in C.J.W.'s face And began to physically and verbally abuse C.J.W. by, among other things, putting his hands on C.J.W. to control him, yelling at him while also repeatedly calling him "homie."

10.   When C.J.W. told Sheriff Berlin – "Get out of my face," Sheriff Berlin physically assaulted C.J.W. by shoving C.J.W. into his football equipment locker.

11.   Sheriff Berlin's assault ended when Todd Breland, the head coach for South Jones, intervened, which then led to a verbal altercation between Sheriff Berlin and Coach Breland.

12.   The scene in the locker room was chaotic and witnessed by players and parents.

13.   At the time of the assault, Sheriff Berlin acted under color of law.

14.   At the time of the assault, Sheriff Berlin was the chief law enforcement officer of Jones County.

15.   At the time of the assault, Sheriff Berlin was the chief policymaker for the Jones County Sheriff's Department.

16.   At the time of the assault, no probable cause existed for any reasonable law enforcement officer to conclude that C.J.W. had committed any crime.

17.     At the time of the assault, no reasonable officer would have believed that these actions were lawful.

VIOLATION NO. 2
(Unlawful Seizure)

18.     Immediately before and continuing through the physical assault of C.J.W., without reasonable suspicion, Sheriff Berlin unlawfully stopped and seized C.J.W., thus violating his Fourth Amendment Rights.

19.     When these actions occurred, no reasonable officer would have believed that said actions were lawful.

**DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983**

20.     At all times, these acts were carried out under the color of state law and by individuals acting in their official capacity as agents of the Jones County Sheriff's Department ("JCSD").

21.     These acts deprived the minor child of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth Amendment and in violation of 42 U.S.C. § 1983.

**COUNT 1**
FOURTH AMENDMENT EXCESSIVE FORCE

22.     The Fourth Amendment to the Constitution of the United States guarantees that *"[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."*

23.     The Fourth Amendment to the Constitution of the United States protects citizens against the use of excessive force during an arrest.

4

24.    C.J.W. was not committing a crime at any point before, during or after the unlawful acts of Sheriff Joe Berlin.

25.    C.J.W. had not committed a crime in the presence of the Sheriff or any of the other agents, officers, or deputies present.

26.    C.J.W. was assaulted by Sheriff Joe Berlin.

27.    Under these circumstances, excessive force was used against C.J.W. in violation of his Fourth Amendment Rights.

**COUNT 2**
FOURTH AMENDMENT UNLAWFUL SEIZURE

28.    The Fourth Amendment to the Constitution of the United States guarantees that *"[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."*

29.    The Fourth Amendment to the Constitution of the United States protects citizens against being unlawfully detained by law enforcement.

30.    C.J.W.'s person was seized and illegally detained by Sheriff Joe Berlin, who was accompanied by ten or more other security personnel, some or all of whom worked for Sheriff Berlin at JCSD.

**COUNT 3**
MONELL CLAIM

31.    The actions by Sheriff Berlin were not connected with any legitimate law enforcement action. Rather, they were the result of JCSD's "custom" of assaulting and arresting any citizen who is perceived to have "disrespected" Sheriff Berlin, the JCSD, or any of its individual deputies.

32.    Sheriff Berlin and the JCSD have a persistent, widespread practice of assaulting, seizing, arresting, and falsely charging innocent persons for perceived slights and exercising their First Amendment protected speech rights.

33.    In the instant case, Sheriff Berlin was retaliating against C.J.W. because Sheriff Berlin believed that C.J.W. had "mouthed off" to some of his deputies.

34.    Though not a formally adopted policy, officials and employees of the JCSD have repeatedly, and with the blessing of the chief policy maker, assaulted, arrested, and falsely charged individuals, not for criminal violations, but for having the audacity to disagree or talk back.

35.    Though not a formally adopted policy, this conduct is so common and well-settled that it fairly represents JCSD policy that knowingly causes and results in the violation of federal secured rights

36.    The Defendants failed to ensure adequate training in probable cause, First Amendment speech rights, Fourth Amendment search, seizure, and use of force standards.

37.    As is demonstrated by the numerous other violations by the JCSD, and its chief policymaker, the County is deliberately indifferent to the fact that these constitutional violations have been repeatedly occurring and are a highly predictable consequence of the JCSD's inadequate training and Sheriff Berlin's inadequate supervision.

38.    The JCSD has a history of wrongfully tolerating, condoning and encouraging constitutional violations. As a result, the custom and culture at the JCSD is for the JCSD to protect its deputies when they violate the constitutional rights of others, and where the JCSD only disciplines deputies, if at all, when their actions are exposed by third-party video, making the misconduct impossible to deny or explain away.

39.     The JCSD has acted with deliberate indifference to a pattern of past occurrences of constitutional violations of citizens such that its deputies feel empowered to act with impunity.

40.     These customs and practices are the moving force behind the violations of the C.J.W.'s rights.

## DAMAGES

41.     The Defendants are liable to the Plaintiffs, jointly and severally, for all wrongful acts which harmed and caused damage.

42.     Based on these facts and circumstances, and as a direct result of said acts and omissions, the minor child has suffered damage to his reputation; past physical pain and suffering; past, present, and future emotional distress; and other financial losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a JURY TRIAL and that a judgment be entered against Defendants as follows:

1.     Compensatory damages of at least $75,000 or such other amount supported by the evidence at trial;

2.     Punitive damages of at least $500,000 or such other amount supported by the evidence at trial;

3.     Attorney fees and costs of suit under 42 U.S.C. § 1988;

4.     Ordinary taxable costs of suit;

5.     Prejudgment and post-judgment interest at the legal rate and any other further relief as the Court deems just and appropriate.

It is respectfully submitted, this the _____ day of September, 2023.

**CYNTRELL WOODARD-WELLS**

By:        */s/Michael V. Cory, Jr.*
           MICHAEL V. CORY, JR.
           MATTHEW LAWRENCE

7

Of Counsel:

Michael V. Cory, Jr. (MSB# 9868)
mc@dmclaw.net
Christian Medina (MSB# 105708)
cmedina@dmclaw.net
**DANKS MILLER & CORY, PA**
213 South Lamar Street
Jackson, Mississippi 39201
Phone: 601.957.3101

Matthew W. Lawrence (MSB# 105958)
525 N. Main Street
Hattiesburg, MS 39401
Phone:  601.605.8473
mattlawrencelawfirm@gmail.com

8